

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

WEALTH MANAGEMENT                    :
ASSOCIATES LLC,
                                     :
                    Plaintiff,
                                     :    17 Civ. 1924 (KPF)(HBP)
          -against-
                                     :    REPORT AND
CHRISTIAN FARRAD, et al.,                 RECOMMENDATION
                                     :
                    Defendants.
                                     :
-----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE KATHERINE POLK FAILLA, United States

District Judge,

I.   Introduction

          By Order dated February 7, 2018, the Honorable

Katherine Polk Failla, United States District Judge, referred

this matter to me to conduct an inquest with respect to plain-

tiff's damages against defendants.  Pursuant to Judge Failla's

Order, I issued a Scheduling Order on February 12, 2018 (Docket

Item ("D.I.") 43).  My Scheduling Order provided, in pertinent

part:

               1.  Plaintiff shall submit proposed findings of
          fact and conclusions of law concerning damages no later
          than March 12, 2018.  All factual assertions made by

plaintiff are to be supported by either by affidavit or
other material of evidentiary weight.

2.    Defendants Christian Farrad and CF MGMT, LLC
shall submit their response to plaintiff's submissions,
if any, no later than April 12, 2018. IF CHRISTIAN
FARRAD AND CF MGMT, LLC (1) FAIL TO RESPOND TO PLAIN-
TIFF'S SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS
BY APRIL 12, 2018 AND REQUEST AN IN-COURT HEARING, IT
IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION
CONCERNING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN
SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING. See
Transatlantic Marine Claims Agency, Inc. v. Ace Ship-
ping Corp., 109 F.3d  105, 111 (2d Cir. 1997); Fustok
v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d
Cir. 1989) ("[I]t [is] not necessary for the District
Court to hold a hearing, as long as it ensured that
there was a basis for the damages specified in the
default judgment.")

(Scheduling Order, dated Feb. 12, 2018 (D.I. 43)).

On March 9, 2018, I issued an Amended Scheduling Order,
which granted plaintiff's request for an extension of time to
submit proposed findings of fact and conclusions of law to April
11, 2018 (Amended Scheduling Order, dated Mar. 9, 2018 (D.I.
48)).  My Amended Scheduling Order also extended defendants' time
to respond until May 11, 2018.  On April 5, 2018, I extended
plaintiff's time to submit proposed findings of fact and
conclusions of law a second time to April 25, 2018 and extended
defendants' time to respond to May 25, 2018 (Scheduling Order,
dated Apr. 5, 2018 (D.I. 51)).  Both the March 9, 2018 Amended
Scheduling Order and the April 5, 2018 Scheduling Order included
the same admonition as my February 12, 2018 Scheduling Order with

respect to the consequences of defendants' failure to respond to plaintiff's submissions or to contact my chambers.

Plaintiff timely submitted Proposed Findings of Fact and Conclusions of Law on April 25, 2018 (Plaintiff's Proposed Findings of Fact and Conclusions of Law Concerning Damages, dated Apr. 25, 2018 (D.I. 54) ("Pl. Findings")), along with the Declaration of Richard Torres (D.I. 55) and the Supplemental Declaration of Marc Moscowitz (D.I. 56) ("Moscowitz Decl."). However, plaintiff's submissions did not include its attorneys' contemporaneous billing records, which are required to support its request for an award of attorneys' fees. Accordingly, on April 25, 2019, I ordered plaintiff to make a supplemental submission in support of its fee application no later than May 10, 2019 (Order, dated Apr. 24, 2019 (D.I. 59)). Plaintiff submitted the Supplemental Declaration of James S. Yu and accompanying invoices on May 10, 2019 (D.I. 60).

Copies of my February 12, 2018 Scheduling Order were mailed to Mr. Christian Farrad at No. 6-B, 311 West 141st Street, New York, New York 10030 and to CF MGMT, LLC at No. 6-B, 311 West 141st Street, New York, New York 10030. Neither has been returned as undeliverable. I also ordered plaintiff's counsel to mail copies of my March 9, 2018 Amended Scheduling Order to all defendants. Christian Farrad and CF MGMT, LLC have not made any

3

submission in response to plaintiff's submission, nor have they contacted my chambers in any way.  Accordingly, on the basis of plaintiff's submissions alone, I make the following findings of fact and conclusions of law.

II.  Findings of Fact

1.  Plaintiff Wealth Management Associates LLC ("WMA") is a Delaware limited liability company authorized to do business in New York, with its principal place of business in Cutchogue, New York and an office in Manhattan (Complaint, filed Mar. 16, 2017 (D.I. 1) ("Compl.") ¶ 14).[1]

2.  Defendant Christian Farrad, a former employee of plaintiff, is a citizen of the State of New York who resides at 311 West 141st Street, No. 6-B, New York, New York 10030 (Compl. ¶ 15).

3.  Defendant CF MGMT LLC is a Delaware limited liability company with its principal place of business at 311

---

[1]As a result of defendants' default, all the allegations of the complaint, except as to the amount of damages, must be taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971), rev'd on other grounds sub nom., Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973).

4

West 141st Street, No. 6-B, New York, New York 10030 (Compl. ¶ 16).

4.   Plaintiff provides business management services, including financial services, accounting and tax services, to high-income and high-net worth clients in the entertainment and sports industries (Compl. ¶ 21).

5.   Plaintiff's clients include singers, songwriters, rappers, bands, music producers, directors, talent management companies, media executives and actors (Compl. ¶ 21).

6.   Plaintiff attracts and retains clients based on reputation, word-of-mouth referrals and extensive networking, rather than "traditional marketing methods" (Compl. ¶ 22).

7.   Plaintiff maintains confidential information pertaining to its clients, including personal identifying information, income, work history, investments and other sensitive information (Compl. ¶ 30).

8.   Plaintiff also keeps confidential its proprietary business information, including financial strategies, market research, client contracts and fees, industry contacts, referral sources and business opportunities (Compl. ¶¶ 32-33).

9.   Plaintiff hired Farrad as an account manager in 2010.  Farrad's responsibilities in that position included

servicing client accounts, managing client relationships and developing new business on behalf of plaintiff (Compl. ¶ 37).

10.   On July 24, 2013, Farrad signed an agreement with plaintiff in which he agreed not to disclose or misuse plaintiff's confidential information and to return all of plaintiff's property and confidential information upon the termination of his employment with plaintiff (Compl. ¶¶ 39, 41-42).

11.   Farrad also agreed to forego competing with plaintiff or soliciting plaintiff's clients for three years after the termination of his employment with plaintiff (Compl. ¶ 43).

12.   Finally, Farrad agreed that a breach of his agreement with plaintiff would "irreparably and immediately" harm plaintiff and that plaintiff would be entitled to an injunction "to prevent breaches or threatened breaches" of the agreement and a reimbursement of reasonable attorneys' fees incurred by plaintiff in enforcing the agreement (Compl. ¶ 45).

13.   Farrad published a book, entitled <u>Protect Ya Neck! A Music Industry Survival Guide</u>, on March 25, 2016 while he was employed by plaintiff (Compl. ¶ 86).

14.   Forensic analysis of Farrad's desktop computer at plaintiff's office disclosed drafts of Farrad's book and related documents (Compl. ¶ 85).

6

15.   Farrad's book is available for sale on Amazon.com
(Compl. ¶ 86-88).

16.   Farrad's book contains descriptions of his work
experience with plaintiff and discloses plaintiff's business
practices and financial strategies (Compl. ¶ 89).

17.   In a June 7, 2016 email, Farrad falsely informed
one of plaintiff's clients that plaintiff had understaffed one of
the client's projects.  As a result of Farrad's email, plain-
tiff's CEO had to call the client to reassure the client that the
project was being handled appropriately (Compl. ¶ 74-77).

18.   On June 14, 2016, Farrad resigned from his employ-
ment with plaintiff, effective June 30, 2016 (Compl. ¶ 52).

19.   After resigning from his employment with plain-
tiff, Farrad started his own company, CF MGMT, and offered
services similar to those offered by plaintiff (Compl. ¶ 57-58).

20.   On November 25, 2016, plaintiff's client JB
("Client JB"), terminated its business relationship with plain-
tiff (Compl. ¶ 61).  Plaintiff subsequently received an email
from an entity owned by Client JB, inadvertently sent to Farrad's
WMA email address, which included payment instructions for
services rendered to Client JB by CF MGMT (Compl. ¶ 63).

21.   Client JB earned a gross annual income of approxi-
mately $2,500,000.00, based on a review of his 2017 bank records

7

(Moscowitz Decl. ¶ 19).  Plaintiff's annual revenue from Client
JB, based on a fee of five percent of Client JB's gross annual
income, totaled $125,000.00 (Moscowitz Decl. ¶¶ 17, 19-21).
Projecting forward from the date of Client JB's termination of
its business relationship with plaintiff through the expiration
of Farrad's non-compete agreement on June 30, 2019, plaintiff's
lost earnings total $322,916.67 (Moscowitz Decl. ¶¶ 20-22).

        22.  Plaintiff's counsel sent Farrad a cease-and-desist
letter on January 5, 2017, demanding that Farrad abide by the
terms of his non-compete agreement (Compl. ¶ 92).

        23.  Plaintiff commenced this action against defendants
on March 16, 2017, seeking a declaratory judgment that plaintiff
owns Farrad's book and claiming copyright infringement, breach of
contract, breach of fiduciary duty, misappropriation of trade
secrets, unfair competition and tortious interference with
prospective economic advantage (Compl. ¶¶ 94-167).

        24.  Plaintiff alleges that it filed expedited copy-
right registration applications for Farrad's book and the book
cover design with the U.S. Copyright Office on March 3, 2017
(Compl. ¶¶ 101-02).  Those applications were pending on the date
plaintiff filed the complaint in this action (Compl. ¶¶ 101-02);
plaintiff has not provided any information as to whether the U.S.

Copyright Office has issued certificates of registration or
rejected its applications.

25.   Judge Failla entered a preliminary injunction on
June 14, 2017 with the consent of the parties, enjoining defen-
dants from using, disclosing or misappropriating plaintiff's
trade secrets or confidential information, from soliciting
plaintiff's clients and from directly competing with plaintiff's
business (Stipulation and Consent Order for Preliminary Injunc-
tion, dated June 14, 2017 (D.I. 22)).

26.   On June 26, 2017, defendants, represented by
counsel at the time, submitted an answer to plaintiff's complaint
(D.I. 24).

27.   On August 3, 2017, plaintiff's client AF ("Client
AF"), a rap music artist, terminated his business relationship
with plaintiff; Farrad had serviced Client AF's account while he
was employed by plaintiff and remained in contact with Client AF
after resigning from his employment with plaintiff (Moscowitz
Decl. ¶¶ 5, 7-8).

28.   Client AF's former manager subsequently informed
plaintiff's CEO that Farrad attends all of Client AF's events in
New York (Moscowitz Decl. ¶ 10).

29.   Plaintiff does not explicitly claim, and offers no other evidence to support the conclusion, that Farrad is now servicing Client AF.

30.   Former counsel for the defendants moved to withdraw from the case with consent of defendant Farrad on November 2, 2017 (D.I. 36).  Judge Failla granted the motion to withdraw on November 15, 2017 and directed Farrad to notify the Court by December 15, 2017 whether he intended to retain new counsel or seek leave to proceed pro se (Order, dated Nov. 15, 2017 (D.I. 37)).  Judge Failla's November 15, 2017 Order further noted that corporate defendant CF MGMT LLC may not proceed pro se (D.I. 37).

31.   On December 19, 2017, Judge Failla ordered defendants to advise the Court within 30 days whether they had obtained new counsel (Order to Show Cause, dated Dec. 19, 2017 (D.I. 40)).  Judge Failla further ordered that, if defendants did not timely respond to the Court's order, they were to show cause by February 6, 2018 why she should not enter a default judgment against them (D.I. 40).

32.   Thereafter, defendants failed to appear or defend this action and failed to respond to Judge Failla's order to show cause. At the February 6, 2018 hearing on the Court's order to show cause, Judge Failla found that Farrad's book was a work-for-hire that was owned by plaintiff and that plaintiff prevailed on

10

its claim for copyright infringement by virtue of defendants'
default (Transcript of Proceedings, dated Feb. 6, 2018 (D.I. 44)
at 11-12).  On February 7, 2018, Judge Failla dismissed defen-
dants' counterclaims for failure to prosecute and entered a
default judgment against defendants (Order, dated Feb. 7, 2018
(D.I. 42)).

III.  Conclusions of Law

      A.  Jurisdiction
          and Venue

        33.  The Court has subject matter jurisdiction over
this action pursuant to 28 U.S.C. § 1331 because plaintiff
alleges violations of two federal statutes -- the Copyright Act
of 1976 and the Defend Trade Secrets Act of 2016 ("DTSA").  The
Court also has supplemental jurisdiction pursuant to 28 U.S.C. §
1367(a) with respect to plaintiff's state law claims because they
are part of the "same case or controversy" as his federal claims.

        34.  Venue is proper in this District pursuant to 28
U.S.C. § 1391(b)(1) because defendants are residents of the
Southern District of New York.

11

B.   Permanent Injunction

35.   Plaintiff seeks a permanent injunction barring further sales of Farrad's book and enjoining defendants from (1) using, disclosing or misappropriating plaintiff's confidential information, (2) soliciting plaintiff's clients through August 2020 and (3) engaging in direct competition with plaintiff's business through August 2020 (Pl. Findings at 15-17, 21-23).

36.   "'A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'"   Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 632 (S.D.N.Y. 2011) (Marrero, D.J.), quoting Pitbull Prods. Inc. v. Universal Netmedia, Inc., 07 Civ. 1784 (RMB)(GWG), 2007 WL 3287368 at *5 (S.D.N.Y. Nov. 7, 2007) (Gorenstein, M.J.).

37.   In this case, the applicable statutes are the Copyright Act and the DTSA.

38.   The Copyright Act allows the Court to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."   17 U.S.C. § 502(a).

12

39.   The DTSA allows the Court to "grant an injunction
. . . to prevent any actual or threatened misappropriation . . .
on such terms as the court deems reasonable . . . ."  18 U.S.C. §
1836(b)(3)(A).

> 40.   "[A] plaintiff seeking a permanent injunction must
> satisfy a four-factor test before a court may grant
> such relief.  A plaintiff must demonstrate:  (1) that
> it has suffered an irreparable injury; (2) that reme-
> dies available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plain-
> tiff and defendant, a remedy in equity is warranted;
> and (4) that the public interest would not be disserved
> by a permanent injunction."

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010),
quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391
(2006); accord Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir.
2010).


1.   Irreparable Injury

41.   "[C]ourts must not simply presume irreparable
harm. . . .  Rather, plaintiffs must show that, on the facts of
their case, the failure to issue an injunction would actually
cause irreparable harm."  Salinger v. Colting, supra, 607 F.3d at
82; accord WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 285 (2d Cir.
2012); U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F.
Supp. 2d 515, 540 (S.D.N.Y. 2011) (Sweet, D.J.); see also First

W. Capital Mgmt. Co. v. Malamed, 874 F.3d 1136, 1143 (10th Cir. 2017) (no presumption of irreparable harm under DTSA).

42.   "[C]ourts have found irreparable harm in copyright cases where the infringement 'would substantially diminish the value' of the work, 'losses would be difficult to measure,' and 'monetary damages would be insufficient to remedy the harms.'" Pearson Educ., Inc. v. Labos, 19 Civ. 487, 2019 WL 1949820 at *6 (S.D.N.Y. Apr. 23, 2019) (McMahon, D.J.), quoting WPIX, Inc. v. ivi, Inc., supra, 691 F.3d at 285.

43.   In this case, the injury that plaintiff has suffered as a result of Farrad's copyright infringement -- the disclosure of plaintiff's trade secrets in Farrad's book, a work-for-hire owned by plaintiff -- is not the kind of injury that the Copyright Act seeks to remedy.  The Copyright Act does not protect ideas, processes or methods of operation like the business practices and financial strategies that plaintiff alleges that Farrad's book divulges.  See 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . ."); Golan v. Holder, 565 U.S. 302, 329 (2012) ("'Due to this [idea/expression] distinction, every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication'; the author's

14

expression alone gains copyright protection."). Plaintiff's proper remedy is injunctive relief under the DTSA, as set forth below. See Comput. Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992) ("[T]rade secret doctrine protects the discovery of ideas, processes, and systems which are explicitly precluded from coverage under copyright law . . . ."); accord Thayil v. Fox Corp., 11 Civ. 4791 (SAS), 2012 WL 364034 at *3 (S.D.N.Y. Feb. 2, 2012) (Scheindlin, D.J.).

44. Thus, plaintiff is not entitled to a permanent injunction under the Copyright Act.

45. "[W]hen considering irreparable harm under the DTSA, courts generally analyze injunctive requests according to traditional notions of what is required for such relief." JTH Tax, Inc. v. Freedom Tax, Inc., Civil Action No. 3:19-cv-00085-RGJ, 2019 WL 2062519 at *13 (W.D. Ky. May 9, 2019) (collecting cases); see Capstone Logistics Holdings, Inc. v. Navarrete, 17 Civ. 4819 (GBD), 2018 WL 6786338 at *33-*34 (S.D.N.Y. Oct. 25, 2018) (Daniels, D.J.) (analyzing irreparable harm under New York law concerning "the use and disclosure of an employer's confiden-tial customer information").

46. "'Generally, when a party violates a [reasonable] non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes

15

irreparable harm' . . . ."  Singas Famous Pizza Brands Corp. v.
N.Y. Advert. LLC, 468 F. App'x 43, 46 (2d Cir. 2012) (summary
order) (alteration in original), quoting Johnson Controls, Inc.
v. A.P.T. Critical Sys., Inc., 323 F. Supp. 2d 525, 532 (S.D.N.Y.
2004) (Leisure, D.J.); accord Marsh USA Inc. v. Karasaki, 08 Civ.
4195 (JGK), 2008 WL 4778239 at *14 (S.D.N.Y. Oct. 31, 2008)
(Koeltl, D.J.) ("It is well established in this Circuit that the
loss of client relationships and customer goodwill that results
from the breach of a non-compete clause generally constitutes
irreparable harm.").

   47.   Even "[w]here a contract contains an acknowledg-
ment that a breach constitutes irreparable injury, the Court
remains obliged to make an independent determination as to
whether injunctive relief is appropriate."  Empower Energies,
Inc. v. SolarBlue, LLC, 16 Civ. 3220 (DLC), 2016 WL 5338555 at
*12 (S.D.N.Y. Sept. 23, 2016) (Cote, D.J.) (internal quotation
marks omitted), comparing N. Atl. Instruments, Inc. v. Haber, 188
F.3d 38, 49 (2d Cir. 1999) and Ticor Title Ins. Co. v. Cohen, 173
F.3d 63, 69 (2d Cir. 1999), with Baker's Aid, a Div. Of M.
Raubvogel Co., v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d
Cir. 1987); see also Solomon Agency Corp. v. Choi, 16-CV-0353
(LDH)(RML), 2016 WL 3257006 at *4 (E.D.N.Y. May 16, 2016) ("Al-

though not controlling, the acknowledgment certainly adds further support for a finding of irreparable harm.").

48.   Here, plaintiff has sufficiently established irreparable injury as a result of defendants' misappropriation of its trade secrets and violation of Farrad's confidentiality agreement and non-compete clause.  Plaintiff has already been irreparably injured by virtue of Farrad's siphoning away one of plaintiff's clients and his publication of plaintiff's trade secrets in his book.  Moreover, Farrad acknowledged that such violations would cause irreparable harm to plaintiff when he executed the agreements.  Finally, the failure to issue an injunction would cause ongoing irreparable harm to plaintiff because plaintiff's trade secrets and other proprietary information will remain available to the public for as long as Farrad's book continues to be sold.

### 2.   Inadequacy of Monetary Damages

49.   "[I]njunctive relief is appropriate where it would be 'very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.'"  Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404

(2d Cir. 2004), quoting Ticor Title Ins. Co. v. Cohen, supra, 173
F.3d at 69; accord Singas Famous Pizza Brands Corp. v. N.Y.
Advert. LLC, supra, 468 F. App'x at 46.

50.  Although plaintiff is entitled to monetary damages
to compensate for defendants' solicitation of Client JB, as set
forth below, a monetary award cannot fully compensate plaintiff
for the loss of client relationships and goodwill.

### 3.  Balance of Hardships

51.  With respect to the third factor, the balance of
hardships between the parties, defendants have not identified any
hardship imposed by the issuance of a permanent injunction.
Therefore, this factor favors plaintiff.  See Pearson Educ., Inc.
v. Vergara, supra, 2010 WL 3744033 at *5 (balance of hardships
weighs in favor of plaintiff where defaulting defendant failed to
identify any hardships).  Moreover, a permanent injunction would
merely serve to enforce the contractual terms to which Farrad
agreed in the first place.  Thus, he previously consented to any
resulting hardship.

### 4.  Public Interest

52.  Finally, in this case a permanent injunction
serves the public interest.  As noted above, a permanent injunc-

18

tion merely enforces the contractual terms to which Farrad agreed.  Prospective clients in the market plaintiff serves may hire plaintiff or any of plaintiff's other competitors; they simply may not hire defendants until after the expiration of the injunction.

53.  Thus, I recommend that the Court issue a permanent injunction enjoining defendants from (1) using, disclosing or misappropriating plaintiff's confidential information, including through further sales of Farrad's book, (2) soliciting plaintiff's clients through August 2020 and (3) engaging in direct competition with plaintiff's business through August 2020.

C.  Monetary Damages

1.  Copyright Claims

54.  Plaintiff seeks an award of $10,000.00 in statutory damages plus prejudgment interest pursuant to 17 U.S.C. § 504(a) (Pl. Findings at 15, 18-19).

55.  However, "[u]nder 17 U.S.C. § 412, a plaintiff may not recover statutory damages or attorney's fees for any infringement 'commenced' before the effective date of a copyright's registration." Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 (2d Cir. 2007); accord Craig v. UMG Recordings, Inc., 16 Civ.

5439 (JPO), 2019 WL 143929 at *7 (S.D.N.Y. Mar. 29, 2019)
(Oetken, D.J.) ("[A]s precondition to obtaining statutory damages
and attorney's fees, a plaintiff must have registered its copy-
right before the alleged infringement.").

56.   Plaintiff filed its copyright registration appli-
cations for Farrad's book and the book cover design with the U.S.
Copyright Office on March 3, 2017 (Compl. ¶¶ 101-02), almost a
year after Farrad published the book on March 25, 2016 (Compl. ¶
86).   Thus, plaintiff failed to register its copyright before the
commencement of Farrad's infringement.

57.   Accordingly, plaintiff's request for an award of
statutory damages and attorneys' fees pursuant to 17 U.S.C. §
504(a) should be denied.

2.   Loss of Client Business

58.   Plaintiff also seeks monetary damages in compensa-
tion for defendants' solicitation of Client JB and Client AF,
which defendants allegedly achieved by misappropriating plain-
tiff's trade secrets and violating Farrad's non-compete agree-
ment.   This conduct forms the basis for plaintiff's DTSA claim
and its state law claims for breach of contract, breach of
fiduciary duty, unfair competition and tortious interference with
prospective economic advantage (Compl. ¶¶ 122-67).

20

59.   The Defend Trade Secrets Act allows the Court to "award . . . damages for actual loss caused by the misappropriation of the trade secret; and . . . damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss . . . ."   18 U.S.C. § 1836(b)(3)(B).

60.   "New York law provides three methods of awarding damages for misappropriation of trade secrets -- compensation for plaintiff's losses, an accounting of defendant's profits, or a reasonable royalty . . . ."   Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 268 (S.D.N.Y. 2005) (Haight, D.J.); accord Shamrock Power Sales, LLC v. Scherer, 12 Civ. 8959 (KMK)(JCM), 2016 WL 7647597 at *12 (S.D.N.Y. Dec. 8, 2016) (McCarthy, M.J.) (Report & Recommendation), adopted at, 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017) (Karas, D.J.).

61.   "[O]n an unfair competition claim, plaintiff may recover the amount it would have earned in the absence of a defendant's wrongful act, including lost profits directly attributable to the wrongful act . . . ."   24/7 Records, Inc. v. Sony Music Entm't, Inc., 566 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2008) (Cedarbaum, D.J.); accord Suburban Graphics Supply Corp. v. Nagle, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163 (2d Dep't 2004), quoting Allan Dampf P.C. v. Bloom, 127 A.D.2d 719, 720, 512

21

N.Y.S.2d 116, 117 (2d Dep't 1987) ("The measure of damages for 'unfair competition and the misappropriation and exploitation of confidential information is the loss of profits sustained by reason of the improper conduct . . . limited to lost profits resulting from the defendant's actual diverting' of customers."); see also Earth Alterations, LLC v. Farrell, 21 A.D.3d 873, 874, 800 N.Y.S.2d 744, 745 (2d Dep't 2005) ("'[T]he proper measure of damages [for breach of a restrictive covenant not to compete] is the net profit of which plaintiff was deprived by reason of defendant[s'] improper competition with plaintiff.'"), quoting Pencom Sys. v. Shapiro, 193 A.D.2d 561, 561, 598 N.Y.S.2d 212, 212 (1st Dep't 1993).

62.   "'Future lost profits . . . may be awarded based upon known reliable factors without undue speculation.'" ScentSational Techs., LLC v. PepsiCo, Inc., 13 Civ. 8645 (KMK), 2017 WL 4403308 at *16 (S.D.N.Y. Oct. 2, 2017) (Karas, D.J.), quoting Suburban Graphics Supply Corp. v. Nagle, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163 (2d Dep't 2004).

63.   In this case, plaintiff's lost earnings resulting from Farrad's wrongdoing are readily calculated based on a percentage of the prior earnings of the client he solicited away from plaintiff.  According to plaintiff, the loss of Client JB cost plaintiff $322,916.67 in projected earnings (Moscowitz Decl.

22

¶ 22).  Thus, plaintiff is entitled to recover $322,916.67 from defendants as lost profits.

      64.  However, plaintiff has failed to make a sufficient showing that it is entitled to recover damages for the loss of Client AF.  Plaintiff does not claim that Client AF hired defendants after terminating his relationship with plaintiff.  In support of its conclusion that defendants' wrongdoing caused the loss of Client AF's business, plaintiff offers only that Farrad had serviced Client AF's account while employed by plaintiff, that Farrad remained in contact with Client AF after resigning from his employment with plaintiff (Moscowitz Decl. ¶¶ 5, 7-8) and that Client AF's former manager informed plaintiff's CEO that Farrad attends all of Client AF's events in New York (Moscowitz Decl. ¶ 10).  These facts do not establish by a preponderance of the evidence that defendants induced Client AF to terminate his relationship with plaintiff or that Farrad violated his non-compete clause by soliciting or obtaining Client AF's business.  Farrad's ongoing communications with Client AF, without greater specificity, do not support an inference that Client AF has hired defendants.  Similarly, given that Client AF is a musician who performs publicly, Farrad's attendance at Client AF's shows and events in New York does not distinguish Farrad from hundreds, if

23

not thousands, of other individuals who attend Client AF's shows and performances.

65.   Thus, I recommend that plaintiff receive an award of $322,916.67 to compensate for the loss of Client JB's business, but that plaintiff receive no award for the loss of Client AF's business.

66.   Plaintiff also seeks prejudgment interest at a rate of nine percent from November 25, 2016 -- the date Client JB terminated his relationship with plaintiff -- to the date that judgment is entered.

67.   "Where a plaintiff seeks damages for trade secret misappropriation . . . pre-judgment interest is mandatory." LinkCo, Inc. v. Fujitsu Ltd., 232 F. Supp. 2d 182, 192 (S.D.N.Y. 2002) (Scheindlin, D.J.); accord Shamrock Power Sales, LLC v. Scherer, supra, 2016 WL 7647597 at *14-*15.

68.   "The annual rate of interest on the compensatory damages for trade secret misappropriation is nine percent." Softel, Inc. v. Dragon Med. & Sci. Commc'ns Ltd., 891 F. Supp. 935, 944 (S.D.N.Y. 1995) (Cedarbaum, D.J.), citing N.Y. C.P.L.R. § 5004; accord Shamrock Power Sales, LLC v. Scherer, supra, 2016 WL 7647597 at *15.

69. Accordingly, I recommend that the Court award plaintiff prejudgment interest at a rate of nine percent from November 25, 2016 to the date that judgment is entered.

D. Attorneys' Fees and Costs

70. Pursuant to 18 U.S.C. § 1836(b)(3)(D) and the July 24, 2013 confidentiality agreement between plaintiff and Farrad, plaintiff is also entitled to an award of its reasonable attorneys' fees and costs. Plaintiff seeks $143,198.00 in attorneys' fees and $5,111.78 in costs (Supplemental Declaration of James S. Yu in Support of Plaintiff's Request for Attorney's Fees, dated May 10, 2019 (D.I. 60) ("Yu Decl.") at 9 and Ex. 14).

1. Attorneys' Fees

71. It is well settled in this Circuit that courts utilize the "lodestar" method, i.e., "the product of a reasonable hourly rate and the reasonable number of hours required by the case," to determine a presumptively reasonable attorneys' fee award. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); see also Sajvin v. Singh Farm Corp., 17-CV-4032, 2018 WL 4214335 at *8-*9 (E.D.N.Y. Aug. 13, 2018) (Report & Recommendation), adopted at, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018); Reyes v. Lincoln Deli Grocery Corp., 17 Civ. 2732 (KBF), 2018 WL

25

2722455 at *8 (S.D.N.Y. June 5, 2018) (Forrest, D.J.).  Under

this method, courts look to "the market rate 'prevailing in the

community for similar services by lawyers of reasonably compara-

ble skill, experience and reputation.'"  Greathouse v. JHS

Security, Inc., supra, 2017 WL 4174811 at *2, quoting Blum v.

Stenson, 465 U.S. 886, 895 n.11 (1984).

     72.  The hourly rates to be used in calculating the

lodestar figure should be "what a reasonable, paying client would

be willing to pay."  Arbor Hill Concerned Citizens Neighborhood

Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2008).

     73.  A fee request will be granted if the number of

hours expended on an action are reasonable.  Trs. of United

Teamster Fund v. Ronnie's Truck Serv., Inc., CV-07-4456

(CPS)(RML), 2008 WL 2686993 at *4 (E.D.N.Y. 2008).

     74.  The Honorable Loretta A. Preska, United States

District Judge, has summarized the factors to be considered in

assessing the reasonableness of the hours claimed in a fee

application:

> To assess the reasonableness of the time expended
> by an attorney, the court must look first to the time
> and work as they are documented by the attorney's
> records.  See Forschner Group, Inc. v. Arrow Trading
> Co., Inc., No. 92 Civ. 6953 (LAP), 1998 WL 879710, at
> *2 (S.D.N.Y. Dec. 15, 1998).  Next the court looks to
> "its own familiarity with the case and its experience
> generally . . . .  Because attorneys' fees are dependent
> on the unique facts of each case, the resolution of the

26

issue is committed to the discretion of the district
court." AFP Imaging Corp. v. Phillips Medizin Sys.,
No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1 (S.D.N.Y.
Dec. 13, 1994) (quoting Clarke v. Frank, 960 F.2d 1146,
1153 (2d Cir. 1992) (quoting DiFilippo v. Morizio, 759
F.2d 231, 236 (2d Cir. 1985))).

                    *       *       *

      Finally, billing judgment must be factored into
the equation. Hensley, 461 U.S. at 434; DiFilippo, 759
F.2d at 235-36. If a court finds that the fee appli-
cant's claim is excessive, or that time spent was
wasteful or duplicative, it may decrease or disallow
certain hours or, where the application for fees is
voluminous, order an across-the-board percentage reduc-
tion in compensable hours. In re "Agent Orange" Prod-
ucts Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987)
(stating that "in cases in which substantial numbers of
voluminous fee petitions are filed, the district court
has the authority to make across-the-board percentage
cuts in hours 'as a practical means of trimming fat
from a fee application'" (quoting Carey, 711 F.2d at
1146)); see also United States Football League v.
National Football League, 887 F.2d 408, 415 (2d Cir.
1989) (approving a percentage reduction of total fee
award to account for vagueness in documentation of
certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00

Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002);

accord Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also

Reiseck v. Universal Communications of Miami, Inc., 06 Civ. 0777

(LGS)(JCF), 2014 WL 5374684 at *8 (S.D.N.Y. Sept. 2014) (Francis,

M.J.) (Report & Recommendation), adopted at, 2014 WL 5364081

(S.D.N.Y. Oct. 22, 2014) (Schofield, D.J.) (applying a 10%

27

deduction to the requested attorneys' fees, rather than an item-by-item analysis).

75.   The party seeking fees bears the burden of establishing that the hourly rates and the number of hours for which compensation is sought are reasonable. Hensley v. Eckerhart, supra, 461 U.S. at 437; accord Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994).

76.   Plaintiff seeks a fee award based on the following rates per hour:  $675.00 in 2017 and $600.00 in 2018 for J. Yu; $705.00 for E. Maluf, a partner; $585.00 for J. Cohen, a partner; $435.00 for J. Hecht, an associate; $465.00 for J. Schachter, an associate; $220.00 for S. Kinne, a junior associate; $355.00 for N. Shah, a junior associate; $280.00 in 2017 and $295.00 in 2018 for C. Ylagan, a paralegal; and $215.00 for D. Deng, a paralegal (Yu Decl. at 1-2 and Exs. 1-13).

77.   The requested hourly rates of $675.00 for J. Yu, $705.00 for E. Maluf and $585.00 for J. Cohen are reasonable for experienced intellectual property litigators in this District. Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931 (WHP), 2015 WL 7271565 at *4 (S.D.N.Y. Nov. 12, 2015) (Pauley, D.J.) (billing rates from $575.00 to $720.00 per hour for partners within reasonable range); accord Owerko v. Soul Temple Entm't, LLC, 13

28

Civ. 6420 (RLE), 2016 WL 80664 at *2 n.1 (S.D.N.Y. Jan. 7, 2016)
(Ellis, M.J.).

78.   The requested hourly rates of $435.00 for J.
Hecht, $220.00 for S. Kinne and $355.00 for N. Shah are reason-
able for associate attorneys in this District; however, $465.00
per hour for J. Schachter exceeds the range typically approved in
this District. Capitol Records, Inc. v. MP3tunes, LLC, supra,
2015 WL 7271565 at *4 ($450.00 per hour is "the high end of rates
typically approved in this District" for associate attorneys).
Therefore, I reduce J. Schachter's hourly rate to $450.00 for the
purpose of calculating the reasonable fees in this action.

79.   The requested hourly rates of $280.00 and $295.00
for C. Ylagan and $215.00 for D. Deng, the two paralegals who
worked on this matter, also exceed the range typically approved
in this District. Capitol Records, Inc. v. MP3tunes, LLC, supra,
2015 WL 7271565 at *4 ($200.00 per hour is "the high end of rates
typically approved in this District" for non-attorneys); accord
Waterkeeper Alliance, Inc. v. Spirit of Utah Wilderness, Inc., 10
Civ. 1136 (NSR)(LMS), 2016 WL 11483851 at *3 (S.D.N.Y. Sept. 14,
2016) (Smith, M.J.) (Report & Recommendation), adopted at, 2016
WL 6083986 (S.D.N.Y. Oct. 17, 2016) (Román, D.J.).  Therefore, I
reduce C. Ylagan's hourly rate to $200.00 and D. Deng's hourly

29

rate to $150.00 for the purpose of calculating the reasonable
fees in this action.

80.   More than 70 percent of the total number of hours
billed to plaintiff in this matter were worked by J. Yu at a 2017
rate of $675.00 per hour and a 2018 rate of $600.00 per hour (Yu
Decl., Exs. 1-13).   However, a review of the descriptions of J.
Yu's work reveals that some of these tasks could have been
performed by associates at a lower rate.   This assessment is
supported by a comparison of Seyfarth Shaw's own billing records
between 2017 and 2018:   in 2017, J. Yu's hours comprised more
than 82 percent of the firm's billings in this matter, while in
2018 -- when the firm delegated responsibility for preparing
plaintiff's submissions in conjunction with defendants' default,
among other tasks, to associates -- this percentage dropped to
approximately 40 percent (Yu Decl., Exs. 1-13).   Accordingly, I
reduce J. Yu's 2017 hours by 25 percent for the purpose of
calculating the reasonable number of hours expended in this
action.   See Run Guo Zhang v. Lin Kumo Japanese Rest. Inc., 13
Civ. 6667 (PAE), 2015 WL 5122530 at *2 (S.D.N.Y. Aug. 31, 2015)
(Engelmayer, D.J.) (reducing by half the number of hours billed
by partner where work could have been performed by associates).

81.   Seyfarth Shaw also billed plaintiff for 9.7 hours
at a rate of $355.00 per hour for associate N. Shah to prepare

30

non-party subpoenas and 2.4 hours at a rate of $675.00 per hour for J. Yu to revise non-party subpoenas, for a total sum of $5,063.50 (Yu Decl., Ex. 7). Because this is an excessive amount of time to spend on a relatively simple task, I reduce the number of hours billed by N. Shah to 4.9 and the number of hours billed by J. Yu to 0.8, for a total sum of $2,279.50.

82. In all other respects, I find the number of hours expended by Seyfarth Shaw to be reasonable.

83. Thus, plaintiff should also be awarded $116,438.00 for attorneys' fees.

2.  Costs

84. It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); accord Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (Robinson, D.J.); see also Kuzma v. Internal Revenue Service, 821 F.2d 930, 933-34 (2d Cir. 1987). The party moving for costs bears the burden of demonstrating the reasonableness of each charge and "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery." Piedra v. Ecua Restaurant, Inc., 17-CV-3316 (PKC)(CLP), 2018 WL 1136039 at

*20 (E.D.N.Y. Jan. 31, 2018) (Report & Recommendation), adopted at, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018).

85.  Here, plaintiff has failed to provide adequate documentation of the costs incurred.  Plaintiff seeks reimbursement for the $400.00 court filing fee, printing and copying costs, courier and delivery services, online legal research, transcription services, meals and other costs, totaling $5,111.78 (Yu Decl., Exs. 1-13).  However, plaintiff has not submitted invoices, receipts or any other documentation to support an award of reimbursement for these costs.

86.  The Court may take judicial notice of the filing fee in this district and award plaintiff reimbursement for the filing fee without additional documentation.  Piedra v. Ecua Restaurant, Inc., supra, 2018 WL 1136039 at *20.

87.  Thus, plaintiff should be awarded $400.00 for costs.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that the Court issue a permanent injunction enjoining defendants from (1) using, disclosing or misappropriating plaintiff's confidential information, including through further sales of Farrad's book, (2) soliciting plaintiff's

clients through August 2020 and (3) engaging in direct competi-
tion with plaintiff's business through August 2020.  I further
recommend that judgment be entered against defendants awarding
plaintiff:  (1) $322,916.67 in lost profits plus prejudgment
interest at the rate of nine percent from November 25, 2016 to
the date that judgment is entered and (2) $116,438.00 in attor-
neys' fees and $400.00 in costs.  In total, plaintiff is entitled
to a judgment of $439,754.67 in damages and attorneys' fees,
exclusive of prejudgment interest.

V.  OBJECTIONS

          Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Katherine Polk Failla, United States District Judge, 40 Foley
Square, Room 2103, New York, New York 10007 and to the Chambers
of the undersigned, 500 Pearl Street, Room 1670, New York, New
York 10007.  Any requests for an extension of time for filing
objections must be directed to Judge Failla.  FAILURE TO OBJECT
WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS

AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140,

155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d

Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049,

1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983)

(per curiam).


Dated:  New York, New York
        June 21, 2019

                                    Respectfully submitted,


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge


Copy transmitted to:

Counsel for Plaintiff

Copies mailed to:

Mr. Christian Farrad
No. 6-B
311 West 141st Street
New York, New York 10030

CF MGMT, LLC
No. 6-B
311 West 141st Street
New York, New York 10030