UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEALTH MANAGEMENT ASSOCIATES LLC, | |
| Plaintiff, | 17 Civ. 1924 (KPF) |
| -v.- | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| CHRISTIAN FARRAD, and CF MGMT LLC, | |
| Defendants. | |

KATHERINE POLK FAILLA, District Judge:

On February 7, 2018, the Court entered default judgment against Defendants Christian Farrad and CF MGMT LLC. (Dkt. #42). Pending before this Court is the Report and Recommendation issued by then-Magistrate Judge Henry B. Pitman, dated June 21, 2019 (the "Report" (Dkt. #61)), recommending that the Court award Plaintiff Wealth Management Associates LLC: (i) $322,916.67 in lost profits, plus prejudgment interest at the rate of nine percent from November 25, 2016, through the date that judgment is entered; and (ii) $116,438.00 in attorneys' fees and $400.00 in costs.[1] For the reasons set forth below, the Court adopts the Report and Recommendation, except as to Judge Pitman's recommendation that the Court award Plaintiff $400 in costs, which is modified to award Plaintiff $4,696.76 in costs.

---

[1] The Court is indebted to Judge Pitman for his careful work on the Report, which he completed shortly before his retirement from the bench.

## BACKGROUND[2]

The relevant facts underlying this action are set forth in the Report, and the Court assumes familiarity with them. A brief overview of the relevant facts is set forth herein.

Plaintiff Wealth Management Associates LLC ("WMA") provides business management services to high-income and high-net-worth clients in the entertainment and sports industries. (Report ¶ 4). Defendant Christian Farrad was employed as an account manager for Plaintiff from 2010 to 2016. (*Id.* at ¶¶ 9, 18). In July 2013, Farrad entered into a contract with Plaintiff in which he agreed, amongst other things, not to disclose Plaintiff's confidential information, compete with Plaintiff, or solicit Plaintiff's clients for three years after termination of his employment. (*Id.* at ¶¶ 10-11).

In March 2016, Farrad published a book that contained descriptions of Plaintiff's confidential business practices. (Report ¶¶ 14, 16). In June 2016, Farrad resigned from his employment with Plaintiff and started his own Company, CF MGMT ("MGMT"). (*Id.* at ¶¶ 18-19).

On November 25, 2016, Plaintiff's client, JB, terminated his relationship with Plaintiff. (Report ¶ 20). An email inadvertently sent to Plaintiff made it plain that Client JB had entered into a business relationship with Farrad and MGMT. (*Id.*). Plaintiff sent Farrad a cease-and-desist letter in January 2017,

---

[2] This Opinion draws its facts largely from the Report (Dkt. #61) and Plaintiff's objections thereto (Dkt. #65).

demanding that Farrad abide by the terms of his non-compete agreement. (*Id.* at ¶ 22).

Plaintiff commenced this action against Defendants in March 2017, seeking a declaratory judgment that it owned Farrad's book and claiming copyright infringement, breach of contract, breach of fiduciary duty, misappropriation of trade secrets, unfair competition, and tortious interference with prospective economic advantage. (Report ¶ 23). On June 14, 2017, this Court entered a preliminary injunction, enjoining Farrad from further violating his agreement with Plaintiff. (*Id.* at ¶ 25).

On August 3, 2017, Plaintiff's client, AF, terminated his business relationship with Plaintiff. (Report ¶ 27). Farrad had serviced Client AF's account while he was employed by Plaintiff, and Farrad remained in contact with Client AF after resigning from his employment with Plaintiff. (*Id.*). After resigning, Farrad attended all of Client AF's events in New York. (*Id.* at ¶ 28).

On November 15, 2017, Defendants' counsel was granted leave to withdraw from representing Defendants in this matter. (Dkt. #37). On December 19, 2017, the Court ordered Defendants to advise the Court within 30 days if they intended to obtain new counsel. (Dkt. #40). Defendants were advised that failure to respond to that Order might result in the entry of default judgment against Defendants. (*Id.*). On February 7, 2018, having received no response from Defendants, the Court entered default judgment against them. (Dkt. #42). That same day, the Court referred the matter to Magistrate Judge Pitman for an inquest into damages. (Dkt. #41).

Judge Pitman issued an order requiring that the parties submit proposed findings of fact and conclusions of law on or before March 12, 2018. (Report pp. 1-2). Judge Pitman issued several amending orders, extending the time in which the parties could submit their proposed findings of fact and conclusions of law. (*Id.* at p. 2). Plaintiff timely submitted its proposed findings of fact and conclusions of law ("FFCL" (Dkt. #54)), and Defendants neither submitted their own document nor objected to Plaintiff's (Report pp. 3-4).

On June 21, 2019, Judge Pitman issued his Report and Recommendation, recommending that Plaintiff be granted the following relief: (i) $322,916.67 in lost profits, plus prejudgment interest at the rate of nine percent from November 25, 2016, to the date that judgment is entered; and (ii) $116,438.00 in attorneys' fees and $400.00 in costs. (Dkt. #61). As relevant here, Judge Pitman recommended that the Court not grant Plaintiff damages for lost profits related to Client AF, concluding that Plaintiff had not borne its burden of demonstrating that Farrad caused Plaintiff to lose Client AF's business. (Report ¶¶ 64-65). Further, Judge Pitman did not address Plaintiff's application for damages for loss of goodwill, and he recommended that Plaintiff be granted $400 in costs, as opposed to the $5,111.78 it sought. (*Id.* at ¶¶ 84-87). Judge Pitman instructed the parties to file any objections to the Report on or before July 5, 2019. (*Id.* at pp. 33-34).

On July 5, 2019, Plaintiff submitted an objection to the Report, along with three supporting declarations. (Dkt. #65, 66, 67, 68). Defendants did not respond to the Report.

**DISCUSSION**

**A.  Applicable Law**

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The court reviews *de novo* any portions of a magistrate judge's report and recommendation to which a party submits a timely objection. 28 U.S.C. § 636(b)(1).

**B.  Analysis**

Plaintiff has specifically objected to three aspects of the Report: (i) the finding that Plaintiff is not owed lost profits for the loss of Client AF's business; (ii) the Report's failure to address Plaintiff's application for damages for loss of goodwill; and (iii) the calculation of costs owed to Plaintiff. (Dkt. #65). The Court will engage in a *de novo* review of the portions of the Report that are the subject of these objections, before evaluating the portions of the Report to which no objections have been made.

### 1. Plaintiff Failed to Establish That It Is Owed Lost Profits for the Loss of Client AF's Business

Pursuant to the default judgment entered in this matter, the Court found that Farrad breached a provision of his contract with Plaintiff that forbade him from soliciting Plaintiff's clients or competing with Plaintiff for a period of three years after the termination of Farrad's employment with Plaintiff. (Report ¶¶ 11, 23, 32). Plaintiff sought damages for lost profits associated with Farrad's wrongdoing. "[O]n an unfair competition claim, plaintiff may recover the amount it would have earned in the absence of a defendant's wrongful act, including lost profits directly attributable to the wrongful act or profits earned by the defendant that are derived from unfair competition." *24/7 Records, Inc.* v. *Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2008); *see also Earth Alterations, LLC* v. *Farrell*, 800 N.Y.S.2d 744, 745 (2d Dep't 2005) (concluding that when a former employee breaches his covenant not to compete, the proper measure of damages is "the net profit of which plaintiff was deprived by reason of defendant[s'] improper competition with plaintiff (quoting *Pencom Sys.* v. *Shapiro*, 598 N.Y.S.2d 212 (1st Dep't 1993) (alteration in *Earth Alterations*))).

In his thoughtful and thorough Report, Judge Pitman found that:

> plaintiff has failed to make a sufficient showing that it is entitled to recover damages for the loss of Client AF. Plaintiff does not claim that Client AF hired defendants after terminating his relationship with plaintiff. In support of its conclusion that defendants' wrongdoing caused the loss of Client AF's business, plaintiff offers only that Farrad had serviced Client AF's account while employed by plaintiff, that Farrad remained in contact with Client AF after resigning from his employment with

6

> plaintiff and that Client AF's former manager informed plaintiff's CEO that Farrad attends all of Client AF's events in New York. These facts do not establish by a preponderance of the evidence that defendants induced Client AF to terminate his relationship with plaintiff or that Farrad violated his noncompete clause by soliciting or obtaining Client AF's business. Farrad's ongoing communications with Client AF, without greater specificity, do not support an inference that Client AF has hired defendants. Similarly, given that Client AF is a musician who performs publicly, Farrad's attendance at Client AF's shows and events in New York does not distinguish Farrad from hundreds, if not thousands, of other individuals who attend Client AF's shows and performances.

(Report ¶ 64 (internal citations omitted)).

Plaintiff claims that Judge Pitman erred because he found that "Farrad was not liable for soliciting Client AF," even though Farrad's liability had already been adjudicated when default judgment was entered against him. (Dkt. #65 at 9). But Plaintiff misunderstands the import of the default judgment. The entry of default judgment requires the Court to accept as true all of the complaint's factual allegations that do not relate to damages. *See Credit Lyonnais Securities (USA), Inc.* v. *Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The default judgment determined that Farrad had, as relevant here, solicited Plaintiff's clients and competed with Plaintiff in violation of Farrad's contract with Plaintiff. The judgment did not, however, conclusively determine that Farrad had solicited *all* of Plaintiff's clients and could be liable for *any* client Plaintiff lost in the years following Farrad's resignation. To establish that it was owed damages for lost profits related to Client AF, Plaintiff was required to "submit sufficient evidence … to enable the district court to 'establish

7

damages with reasonable certainty.'" *Vidalco Int'l LLC* v. *3 G's Vino LLC*, No. 16 Civ. 5241 (PAE), 2018 WL 5023943, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Nat'l Photo Grp., LLC* v. *Bigstar Entm't, Inc.*, No. 13 Civ. 5467 (JLC), 2014 WL 1396543, at *2 (S.D.N.Y. Apr. 11, 2014)).

Plaintiff admits that its FFCL do not expressly allege that Farrad "is performing Business Management services for Client AF." (Dkt. #65 at 9). Instead, the FFCL allege:

- Client AF was Plaintiff's client, and Farrad had serviced Client AF's account while employed by Plaintiff (FFCL at ¶ 50);

- Farrad and Client AF remained in contact after Farrad left Plaintiff's employment (*id.* at ¶ 51);

- Client AF terminated his business relationship with Plaintiff, stating that his mother would handle his business management needs going forward (*id.* at ¶¶ 52-53);

- Since Client AF terminated his relationship with Plaintiff, Farrad has attended all of Client AF's events and shows in New York City (*id.* at ¶ 54); and

- Farrad has made social media posts from Client AF's performances, in one of which he tagged Client AF's apparel brand (*id.* at ¶ 51).

Read together, these allegations do not establish with reasonable certainty that Farrad caused Client AF to terminate his relationship with Plaintiff, or that Farrad is currently acting as Client AF's business manager. Even accepting as true Plaintiff's uncontested findings of fact and conclusions of law, Plaintiff has

8

failed to establish with reasonable certainty that its lost profits relating to Client AF are directly attributable to Farrad's wrongful conduct.[3]

In a final bid to be awarded lost profits for Client AF's business, Plaintiff asks to supplement the factual record with additional declarations that suggest Farrad does serve as Client AF's business manager. (Dkt. #65 at 10-11). The Court, in its discretion, may allow supplementation of the record. *See Hynes* v. *Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But the Court declines to do so here. Plaintiff has not justified its failure to present this evidence when it had the opportunity to do so, after the matter was referred to Judge Pitman for an inquest into damages. The only rationale Plaintiff offers is that it believed the entry of default judgment entitled it to damages for Client AF's lost business. (*See, e.g.*, Dkt. #65 at 5 n.4). Had it known otherwise, Plaintiff says, it would have sought further non-party discovery and introduced more evidence that: (i) Farrad caused Client AF to terminate his business with Plaintiff; and (ii) Farrad was acting as Client AF's business manager. The Court is not moved by this logic. Plaintiff is counseled in this matter, and as such, any misunderstanding of the legal import of a default judgment would not entitle it to a second bite at the record-building apple.

---

[3] This is easily contrasted with the allegations concerning another one of Plaintiff's former clients, Client JB. The complaint specifically alleged that Farrad was responsible for Client JB terminating its relationship with Plaintiff, and that Farrad was serving as Client JB's business manager. (Dkt. #1 at ¶¶ 61-64). Following the entry of default judgment, these allegations must be accepted as true. *See Credit Lyonnais Securities (USA), Inc.* v. *Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). But even if that were not so, Plaintiff was able to substantiate its allegations with supporting facts. (*See* Dkt. #1 at ¶¶ 63-64).

9

For these reasons, and after *de novo* review, the Court fully agrees with Judge Pitman's well-reasoned conclusion that Plaintiff has failed to demonstrate that it is owed damages for lost profits relating to Client AF.

### 2. Plaintiff Is Not Entitled to Damages for Loss of Goodwill

Plaintiff's objection that the Report failed to address its application for damages for loss of goodwill is well taken. Plaintiff's proposed Findings of Fact and Conclusions of Law plainly sought such damages (FFCL ¶¶ 72-75), and the Court will review this application *de novo*.

"To succeed on a claim for consequential damages in the form of loss of goodwill, a party must make three showings: 1) that a loss of goodwill did in fact occur; 2) objective proof of the amount of that loss; and 3) that the loss was caused by the opposing party's breach." *Hangzhou Silk Imp. & Exp. Corp. v. P.C.B. Int'l Indus., Inc.*, No. 00 Civ. 6344 (RLC), 2002 WL 2031591, at *8 (S.D.N.Y. Sept. 5, 2002) (citing *Toltec Fabrics, Inc. v. August, Inc.*, 29 F.3d 778, at 781 (2d Cir. 1994)). In proceedings before Judge Pitman, Plaintiff requested $250,000 in "monetary damage attributable to [Plaintiff's] loss of goodwill and business opportunities." (FFCL ¶ 75). But Plaintiff made no effort to offer objective proof substantiating this proposed amount of loss. (*See generally* FFCL).

In its objections, Plaintiff attempts to offer objective evidence in support of its application for loss of goodwill damages. Specifically, Plaintiff claims that, since Farrad resigned from Plaintiff's employment and began disparaging Plaintiff's business, Plaintiff has had a sharp decline in revenue and in the total

number of clients serviced. (Dkt. #65 at 11-13). This evidence is supported by declarations that were submitted for the first time after Judge Pitman had ordered such evidence to be produced and after the Report was issued. Plaintiff offers no explanation as to why this evidence could not have been offered at an earlier stage in the proceedings. Accordingly, the Court declines to exercise its discretionary powers to allow this evidence and argument to supplement the record.

Because there is no objective proof in the record of the amount of damages Plaintiff has suffered due to a loss of goodwill, the Court declines to award Plaintiff goodwill damages.

### 3. Plaintiff Is Entitled to Additional Costs

Finally, Plaintiff objects to the Report's finding that it should be awarded only $400 in costs. The Report determined that Plaintiff was owed substantial attorneys' fees — $116,438 — but that Plaintiff had failed to submit adequate documentation to support its request for reimbursement of costs totaling $5,111.78. In its objections to the Report, Plaintiff explains that it was not instructed to submit a Bill of Costs and did not know it was required to do so. In a declaration submitted along with its objections, Plaintiff provides documentation for costs totaling $4,696.76. (Dkt. #68).

In this instance, the Court will allow Plaintiff to supplement the factual record and will consider the newly-provided documentation for costs. The Court takes notice that, while Judge Pitman expressly ordered that Plaintiff submit verification of the attorneys' fees sought, he did not similarly direct

11

Plaintiff to provide a Bill of Costs. (Dkt. #59). Further, the Court understands that different courts have different practices regarding the submission of requests for attorneys' fees and costs. In light of this, the Court believes that Plaintiff's failure to provide Judge Pitman with a Bill of Costs is excusable.

Having reviewed this new documentation, the Court concludes that Plaintiff is entitled to be awarded $4,696.76 for costs.

### 4. The Court Adopts the Remainder of the Report

After conducting a review of the Report and the record, the Court concludes that the remainder of Judge Pitman's Report is reasonable and not clearly erroneous. Accordingly, the Court adopts the rest of the Report in its entirety.

## CONCLUSION

The Court has thus reviewed portions of the Report *de novo*, and other portions for clear error. With the exception of the Report's proposed award for costs, the Court agrees completely with Judge Pitman's thoughtful and well-reasoned Report and hereby adopts its reasoning by reference.

For the foregoing reasons, the Court awards Plaintiff: (i) $322,916.67 in lost profits, plus prejudgment interest at the rate of nine percent from November 25, 2016, through the date that the judgment is entered; and (ii) $116,438.00 in attorneys' fees and $4,696.76 in costs.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: December 3, 2019
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge